■ Luis Melendez, Appellant, v American Airlines, Inc., et al., Respondents. [735 NYS2d 128] —Order, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered January 24, 2000, which granted defendants' motion for summary judgment, unanimously reversed, on the law, without costs, the motion denied and the complaint reinstated. Appeal from order, same court and Justice, entered July 12, 2000, which denied plaintiff's motion to renew, unanimously dismissed, without costs, as academic in view of the foregoing.

In this personal injury action, the defective condition that caused plaintiff to fall while working as a baggage handler was

a crack approximately 10 feet long and 2 to 3 inches deep located on the pavement of an airport facility defendant American Airlines, Inc. (American) leased from nonparty Port Authority of New York and New Jersey. American subleased the facility to plaintiff's employer, American Eagle Airlines (Eagle), not a party here. Defendant AMR Corporation was American's parent corporation.

A landlord that has transferred possession and control over property to a tenant is generally not liable for accidents caused by a subsequently arising dangerous condition (*see, Johnson v Urena Serv. Ctr.*, 227 AD2d 325, *lv denied* 88 NY2d 814). This rule does not apply where the landlord, either contractually or through a course of conduct, has become obligated to maintain or repair the property or a portion of the property which contains the defective condition (*see, Johnson, supra; Cherubini v Testa*, 130 AD2d 380, 382). A landlord who has the right but not the obligation to enter the premises and make needed repairs at the tenant's expense may be liable if the dangerous condition constitutes a significant structural or design defect that is contrary to a specific safety provision (*see, Johnson, supra*, at 326, citing *Quinones v 27 Third City King Rest.*, 198 AD2d 23, 24).

While American was not obligated under its sublease with Eagle to repair the crack, there is an issue of fact as to whether American assumed such an obligation through a course of conduct (*see, Cherubini, supra*). Donald Smith, American's manager of Facilities Maintenance at the airport, testified that his department had the capability to repair cracks by using asphalt, but that Eagle did not, because it did not have the appropriate personnel and equipment. Smith also testified that he was not entirely familiar with the terms of the sublease, but that from the time it was entered into, about five years before the accident, American, as a result of an oral agreement, would make necessary repairs upon request. A jury might well find that American was the party responsible for repairing the crack, based on the oral agreement, its ability to make the repair, and Eagle's inability to do so (*see, Webb v Audi*, 208 AD2d 1122).

This factual issue is not eliminated by the lack of proof that Eagle ever requested that American repair the crack. Smith testified that he had occasion to be at the property since American's facilities are close by. He visited the property periodically. According to plaintiff, American employees often traversed the property. Thus, formal notice by Eagle employees to American employees might be unnecessary because the crack was readily visible and apparent.

Further, an affidavit of a fellow baggage handler stated that the crack had existed for at least five months prior to plaintiff's fall. There is thus an issue of fact as to whether American had constructive notice of the condition for such a period of time that, in the exercise of reasonable care, it should have corrected it (*see, Putnam v Stout*, 38 NY2d 607, 612). Concur—Williams, J.P., Rosenberger, Ellerin, Buckley and Marlow, JJ.