■ SIMONETTE HAKIM, Respondent, v 65 EIGHTH AVENUE, LLC, et al., Appellants. [840 NYS2d 323]—

Order, Supreme Court, New York County (Debra A. James, J.), entered July 20, 2006, which, to the extent appealed from as limited by the briefs, denied defendants' cross motion for summary judgment, modified, on the law, the cross motion granted to the extent of dismissing the complaint as against defendant Wartski, and otherwise affirmed, without costs.

Plaintiff tenant was injured when the metal roll-up security gate outside her store became detached from the building. An out-of-possession landlord who reserves in the lease a right of reentry to inspect the premises and make necessary repairs is deemed to have constructive notice of any existing statutory violations (*see Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559, 566-567 [1987]). The damage to the security gate was allegedly caused by prolonged water exposure from a leaking roof. Defendants were responsible, under the lease, for repairs to the structure and the roof. Therefore, despite being an out-of-possession landlord, defendants cannot disclaim responsibility for the accident as a matter of law.

Defendants assert that sections 27-127 and 27-128 of the New York City Administrative Code are not proper statutory predicates to liability. Because this issue was raised for the first time in defendants' reply brief, it is not properly before the court (*see Markovitz v Markovitz*, 29 AD3d 460 [2006]), and, in any event, the argument is without merit. Should defendants be found negligent, they may not compel plaintiff to provide a defense and indemnification, as provided in the lease, as defendants cannot be indemnified for their own negligence (*see* General Obligations Law § 5-321; *Delgiudice v Papanicolaou*, 5 AD3d 236 [2004]).

The court granted plaintiff's motion to add "AJW Management" as a party defendant to the action. Plaintiff seeks to impose individual liability on Wartski, who was apparently the sole employee and shareholder of AJW Management, because he undertook the management of the premises. However, individual liability cannot be based upon an allegation that amounts to mere nonfeasance unless plaintiff establishes, as a matter of law, that the managing agent was in complete and exclusive control of the premises (*Gardner v 1111 Corp.*, 286 App Div 110, 112 [1955], *affd* 1 NY2d 758 [1956]). Plaintiff's failure to do so warranted summary dismissal of the complaint as against Wartski in his individual capacity.

We have considered defendants' remaining arguments and find them to be without merit. Concur—Tom, J.P., Saxe, Marlow and Malone, JJ.

McGuire, J., dissents in part in a memorandum as follows: In my view, Supreme Court erred in denying that aspect of defendants' motion seeking summary judgment dismissing the complaint as against defendant 65 Eighth Avenue, LLC (the landlord). Accordingly, I respectfully dissent in part.

Plaintiff operated an antiques store out of premises she leased from the landlord. The ground-floor store had a roll-up security gate, apparently made of steel, that protected the storefront. Only plaintiff (and one of plaintiff's friends) had a key to the padlock on the gate; defendants did not possess a key. When it was not in use, the gate was rolled up into a shell that was affixed to the brick facade of the building approximately nine feet from the ground. To pull the gate down, plaintiff would use a long iron instrument with a hook at one end to pull the gate down until she could reach it with her hands; she would then manually pull the gate to the ground. Conversely, to roll the gate up into the shell, plaintiff would push the gate up from the ground until it coiled up into the shell. Early one afternoon, plaintiff, immediately after pushing the gate up into the shell, sustained personal injuries when the shell—with the gate rolled-up inside—fell from the facade and struck plaintiff. The set of parallel I-beams that served as the sidetracks for the gate also fell.

Plaintiff commenced this action against the landlord and one of its employees, claiming that they failed to maintain the demised premises in a reasonably safe condition. In their answer, defendants asserted counterclaims against plaintiff for indemnification and for breach of a provision in the lease requiring plaintiff to procure liability insurance naming defendants as additional insureds. Defendants moved for summary judgment

(1) dismissing the complaint in its entirety, and (2) on the issue of liability on their counterclaims. Supreme Court denied the motion and this appeal ensued.

"A landlord is generally not liable for negligence with respect to the condition of property after the transfer of possession and control to a tenant unless the landlord: (1) is contractually obligated to make repairs or maintain the premises, or (2) has a contractual right to reenter, inspect and make needed repairs and liability is based on a significant structural or design defect that is contrary to a specific statutory safety provision (*Lane v Fisher Park Lane Co.*, 276 AD2d 136, 141 [2000], citing *Johnson v Urena Serv. Ctr.*, 227 AD2d 325, 326 [1996], *lv denied* 88 NY2d 814 [1996]; *see McDonald v Riverbay Corp.*, 308 AD2d 345 [2003]; *Quinones v 27 Third City King Rest.*, 198 AD2d 23 [1993])" (*Vasquez v The Rector*, 40 AD3d 265, 266 [2007]). The lease states, in pertinent part, that the landlord "shall maintain and repair the public portions of the building, both exterior and interior," and that plaintiff "shall . . . take good care of the demised premises and the fixtures and appurtenances therein . . . and at its sole expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition." In a rider to the lease, the responsibility of repairing and maintaining the roof and its structural integrity is imposed on the landlord.\* The portion of the building on which the defective condition was situated cannot be considered a public portion. The shell, in which the gate was housed at the time of the accident, was nine feet above the ground, well out the reach of members of the public (*see* Black's Law Dictionary 1264 [8th ed 2004] ["public," when used as an adjective, defined as, among other things, "(o)pen or available for all to use, share, or enjoy"]). Moreover, only plaintiff (and one of her friends) had a key to the padlock on the gate. The lease did not otherwise

---

\* While the rider imposed upon the landlord the obligation to maintain the roof, it did not impose upon the landlord an obligation to maintain the shell or the gate. Plaintiff attempts to link the landlord's alleged failure to maintain the roof to the collapse of the shell and the gate through the affidavit of her expert. Plaintiff's expert asserts that the shell collapsed because water caused wood between the shell and the facade to deteriorate. Ultimately, according to the expert, the wood "fail[ed]" due to the effects of "prolonged water exposure" and the shell collapsed. The expert's affidavit, however, is conclusory and insufficient to raise a triable issue of fact with regard to whether the landlord's alleged failure to fulfill its obligation under the lease to maintain the roof caused or contributed to the collapse of the shell and the gate (*see Vasquez, supra; Dickens v New York City Tr. Auth.*, 7 AD3d 403 [2004]). Notably, the expert failed to explain how water leaking from the roof could have traveled to the wood between the shell and the facade. The expert also failed to explain how the roof was improperly maintained.

impose upon the landlord a duty to maintain the shell or the gate. Therefore, defendants were not contractually obligated to maintain the portion of the property that contained the defective condition (cf. *Melendez v American Airlines*, 290 AD2d 241, 242 [2002]).

While the landlord had a contractual right to reenter, inspect and make needed repairs to the premises, its alleged liability is not premised upon a significant structural or design defect. Plaintiff alleges that the "roll-up security gate" (presumably, both the shell and the gate) constituted a defective condition; no claim is made that the shell or gate was defectively designed. There is no evidence, however, that the shell, the gate or both in combination, affected the structural integrity of the building. Accordingly, summary judgment in defendants' favor is warranted (*see Vasquez*, *supra*, citing *Torres v West St. Realty Co.*, 21 AD3d 718, 721 [2005], *lv denied* 7 NY3d 703 [2006]; *see also Angwin v SRF Partnership*, 285 AD2d 570, 571 [2001]; *Pavon v Rudin*, 254 AD2d 143, 146-147 [1998]).

In light of my conclusion that defendants are entitled to summary judgment dismissing the complaint in its entirety, I need not address their remaining arguments.